[Civ. No. 42978. Second Dist., Div. Four. Jan. 24, 1974.]

DAVIS DUDLEY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, Dennis A. Fischer, Bernard J. Kamins and Michael Rothschild, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Joseph P. Busch, District Attorney, Harry B. Sondheim and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**FILES, P. J.**—A complaint filed by the district attorney charged petitioner with murder (Pen. Code, § 187). After a preliminary examination the magistrate expressed his opinion that no malice had been shown, and he

held petitioner to answer for the crime of manslaughter (Pen. Code, § 192). The district attorney, purporting to act under the authority of Penal Code section 739,[1] filed an information in the superior court charging murder. Petitioner's motion in the superior court to dismiss this information was denied. Petitioner now asks this court to order the superior court to require that the information be amended to charge manslaughter instead of murder.

The decision to be made here depends upon whether the ruling of the magistrate precluded the prosecutor from filing an information charging murder, under the principles discussed in *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241].

On July 9, 1973, at about 8:15 p.m., the decedent, James Webber, who was a man 61 years of age, and three other men, were sitting on a bench in the alley behind the Union Rescue Mission in downtown Los Angeles. Another group of men, including defendant, passed by. Defendant asked Webber what he was looking at. Webber "said he was not looking at nothin'." Defendant then kicked Webber, or tried to. Webber stood up with his fists clenched as if to fight, but did not swing. Defendant then kicked Webber in the stomach or testicles. Webber started towards the door of the mission but fell or was pushed to the ground. After that, defendant kicked Webber several times in the face and in the ribs. Defendant and his companions ran away when a police officer appeared.

The autopsy showed that Webber died of a brain hemorrhage "due to or as a consequence of traumatic injuries of the head and face." The medical examiner testified that the hemorrhage came from an aneurysm which had existed for many years but which burst with the elevation in blood pressure caused by the attack. The blows struck by defendant would not have been fatal but for the bursting of the aneurysm.

The magistrate made a number of comments about the evidence before ruling. Among other things, he said:

"THE COURT: . . . . The defendant in this case must foresee that the individual he picks is suffering from a pre-existing condition, and if he gets in a fight with him, he might die. .

---

[1] Penal Code section 739: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed. . . ."

"That is why I said in the beginning, and what I meant to say, in trying to guide Counsel during the course of the evidence that I did not think this was murder. I said that it was homicide. I meant murder because the murder case requires showing malice. I think it requires a great deal more proximate cause and the actual cause of death when you are dealing with a pre-existing condition.

" . . . . . . . . . . . . . . . . . .

"There is no question that the evidence does not [*sic*] disclose combative situation, such as was described in this case by the witnesses, and by the autopsy surgeon's findings, which did not disclose any evidence of abandoned malignant heart.

"There has to be expressed malice or implied malice for it to be murder. There is no evidence there from which the Court can conclude, either expressed or implied malice existed in this case.

" . . . . . . . . . . . . . . . . . .

"I think the man should be charged with involuntary manslaughter. I think it is a one-sided fight. I think he took advantage when Mr. Webber was down, but I do not believe that those circumstances in the light of the autopsy surgeon's findings that they were moderate external injuries and do not show abandon and malignant heart."

The petitioner does not attack the information upon the ground that the evidence was insufficient to support a prosecution for murder if the magistrate had held him to answer for that offense.[2] Petitioner's contention here is solely that the magistrate's finding protects him against such a charge in this case. We accept petitioner's implied concession that the evidence was not insufficient as a matter of law, and proceed to an analysis of the legal issue raised by the petition here.

As a starting point, we observe that in *People* v. *Bird* (1931) 212 Cal. 632 [300 P. 23], the defendant was held to answer for manslaughter and brought to trial on a charge of murder. He was convicted of manslaughter, but on appeal contended that the information was void because the district

---

[2]See Penal Code section 188, declaring that malice is implied "when no considerable provocation appears" and the line of cases holding that malice may be inferred from the nature of the attack, even though no intent to take life has been shown, e.g., *People* v. *Mattison* (1971) 4 Cal.3d 177, 182-183 [93 Cal.Rptr. 185, 481 P.2d 193]; *People* v. *Craig* (1957) 49 Cal.2d 313, 319 [316 P.2d 947]; *People* v. *Tubby* (1949) 34 Cal.2d 72, 79 [207 P.2d 51]; *People* v. *Breland* (1966) 243 Cal.App.2d 644, 653 [52 Cal.Rptr. 696]; *People* v. *Zankich* (1961) 189 Cal.App.2d 54, 67 [11 Cal.Rptr. 115]; *People* v. *Mears* (1956) 142 Cal.App.2d 198, 202-203 [298 P.2d 40]; 1 Witkin, California Crimes (1963) section 320, page 291.

attorney had no authority to charge murder. The Supreme Court affirmed the judgment and, in its opinion, upheld the power of the prosecutor to charge any offense "shown by the evidence taken before the magistrate to have been committed," pursuant to former Penal Code section 809, the predecessor of the present section 739.[3]

In *Jones* v. *Superior Court, supra,* 4 Cal.3d 660, the defendant had been charged initially with rape (Pen. Code, § 261), oral copulation (Pen. Code, § 288a) and sodomy (Pen. Code, § 286). At the close of the preliminary examination, the magistrate stated his opinion that the victim had not told the truth in her testimony. The magistrate found that neither the sodomy nor the oral copulation had taken place, and that no force had been used. Since it appeared the victim was under 18 years of age, the defendant was held to answer only for "statutory" rape (former Pen. Code, § 261, subd. 1, now § 261.5). The district attorney filed an information charging all of the offenses charged in the original complaint. The testimony of the victim, if believed, would have supported a conviction of all of these offenses.

The Supreme Court issued a writ of prohibition restraining proceedings on that information. In essence, the court held that the factual determinations made by the magistrate, when he found that the story of the complaining witness lacked credibility, precluded further prosecution for those offenses in that proceeding.

Our difficulty in finding clear guidance from the *Jones* opinion arises in part because of the unusually simple and clear-cut factual issue in that case, and the unusually specific finding made by the magistrate there. The *Jones* case depended upon the credibility of a single witness. The magistrate based his ruling upon the express finding that this witness did not tell the truth as to certain critical matters. In the case at bench, the magistrate's remarks leave considerable room for interpretation, as is often true of the impromptu statements of lawyers and judges. Some portions suggest that the magistrate believed that a stronger showing of causation was required for murder than for manslaughter, or that the offense would not be murder where the assailant was unaware of the victim's pre-existing condition. Another portion might be read as expressing the view that the evidence was insufficient as a matter of law to support a finding of malice.

---

[3]The *Bird* opinion states (at p. 641): "In preparing the information the district attorney unquestionably is called upon to consider the facts as they appear in the testimony taken at the preliminary examination. He must also draw conclusions from those facts in the light of the law applicable thereto in order that he may charge the defendant with the proper offense. But in so doing he does not exercise a judicial power within the scope of the nondelegable power of the judiciary."

The critical distinction between murder and manslaughter is that malice is an element only of the former (see Pen. Code, §§ 187, 192). Malice is a mental state which in this case can only be determined circumstantially. From this record a finding of malice, or the lack thereof, can be arrived at only by drawing inferences from facts which are, for the most part, uncontradicted. Upon the record here, we cannot assume that the magistrate lacked understanding of the distinction between the two kinds of homicide. ■ The view of the record most favorable to the petitioner is that the magistrate drew inferences from the proven facts, which indicated to his mind that there was no malice, even though these same evidentiary facts would have supported a finding of malice in the mind of another reasonable person.

Having thus identified the basis of the magistrate's ruling, we must determine whether it is the kind of fact finding which binds the district attorney, as in *Jones*.

■ In examining this question, we must consider the function of the magistrate who conducts the preliminary examinations of a felony charge. It has long been established that the purpose of that examination is to determine whether there is sufficient or probable cause to hold the defendant for trial. That subject has been recently discussed by the Supreme Court in *People* v. *Uhlemann* (1973) 9 Cal.3d 662 [108 Cal.Rptr. 657, 511 P.2d 609], wherein the court decided that the magistrate's order dismissing a felony complaint would not bar another prosecution for the same offense. That conclusion was reached upon an examination of the special function served by the magistrate in the adjudicatory process. The court said: "Defendant's assumption, that the magistrate's dismissal constituted a valid determination on the merits of the charges against him, is based upon the premise that the magistrate had authority or jurisdiction to make such a determination. To the contrary, the magistrate's role is limited by statute to determining whether or not there is 'sufficient cause' to believe defendant guilty of a public offense. (See Pen. Code, §§ 871, 872.) The term 'sufficient cause' is generally equivalent to 'reasonable and probable cause,' that is, such a state of facts as would lead a man of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*Williams* v. *Superior Court*, 71 Cal.2d 1144, 1147 [80 Cal.Rptr. 747, 81 Cal.Rptr. 761, 458 P.2d 987].) As we recently pointed out in *Taylor* v. *Superior Court,* 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], 'Of course, the probable cause test is not identical with the test which controls a jury. . . . The jury must be convinced to a moral certainty and beyond a reasonable doubt of the existence of the crime charged in the information and of every

essential element of that crime. But a magistrate conducting a preliminary examination must be convinced of only such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations]" '

"Within the framework of his limited role [fn. omitted], however, the magistrate may weigh the evidence, resolve conflicts, and give or withhold credence to particular witnesses (*Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 667). In other words, in assisting him in his determination of 'sufficient cause,' the magistrate is entitled to perform adjudicatory functions akin to the functions of a trial judge. Yet the proceeding is not a trial, and if the magistrate forms a personal opinion regarding the guilt or innocence of the accused, that opinion is of no legal significance whatever in view of the limited nature of the proceedings." (*People* v. *Uhlemann, supra,* 9 Cal.3d at pp. 666-667.)

The relationship between the *Jones* decision and the earlier case law becomes clear when viewed in the light of the magistrate's function to determine probable cause. "Within the framework of his limited role" he is to weigh evidence and find facts. Thus, in a case like *Jones,* where the prosecution is supported only by testimony which the magistrate finds unworthy of belief, there is no sufficient cause to hold the accused for trial. But when the magistrate is confronted with a case where the credible evidence would support a finding of guilty, then, although the magistrate's personal opinion leads him to draw a different inference, there is nevertheless probable cause.

In *People* v. *Bird, supra,* 212 Cal. 632, and *Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521], the Supreme Court held that it is proper for the district attorney to charge an offense in the information even though the magistrate has concluded that the evidence failed to show probable cause that the offense had been committed. The *Jones* opinion cites both of those cases for that holding.[4]

---

[4]"The foregoing rule has been applied to uphold the addition of an offense unnamed in the commitment order even though the magistrate has expressly or impliedly concluded that the evidence failed to show probable cause that the offense had been committed. (*Parks* v. *Superior Court, supra,* 38 Cal.2d 609, 613-614; *People* v. *Bird, supra,* 212 Cal. 632, 644-645 [300 P. 23] . . . .)" *Jones* v. *Superior Court, supra,* 4 Cal.3d at page 665.

In neither *Bird* nor *Parks* does it appear that the magistrate was under any misapprehension as to the applicable law. In *Bird,* the Supreme Court upheld the information charging murder. In *Parks,* the Supreme Court ordered a grand theft count dismissed because the evidence was insufficient, as a matter of law, to show probable cause to prosecute for that offense, but the opinion first affirmed the district attorney's right to include that charge if probable cause appeared from the evidence.

The *Jones* opinion quotes from the *Parks* opinion as follows: ". . . 'As indicated herein the district attorney might include a related offense although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed. The charges as to the theft of the lumber and the giving of a worthless check in payment thereof were related, arose out of the transaction which was the basis for the commitment and, depending on the evidence, could result in conviction of one charge or the other. The district attorney was therefore within his right to include the grand theft charge in the information if the necessary elements of that offense reasonably appeared from the evidence before the magistrate.' (38 Cal.2d at pp. 613-614.)" (4 Cal.3d at p. 665.)

The *Jones* opinion then goes on to say: "The People contend that the information herein should be upheld under *Parks,* for the charges of rape, oral copulation and sodomy, though rejected by the magistrate, were transactionally related to the offense of 'statutory' rape for which petitioners were ordered committed, and those offenses were shown by Miss H.'s testimony to have occurred. We reject the People's position, for if *Parks* were so interpreted such a rule would circumvent the constitutional requirement (which *Parks* itself recognized and applied) that one may not be prosecuted in the absence of a prior determinaton of a magistrate or grand jury that such action is justified. Instead, we have concluded that *Parks* does not permit the district attorney to ignore material factual findings of the magistrate. Although the district attorney may, under *Parks,* challenge the magistrate's ultimate finding that the evidence is legally insufficient to show that the charged offense or offenses occurred, that challenge must be made within the context of the magistrate's findings on the evidence." (4 Cal.3d at pp. 665-666.)

Further on, the *Jones* opinion says: "Thus, several cases prior to the *Parks* decision suggest that the purpose of the 1927 amendment to former Penal Code section 809 (now § 739) was to permit the district attorney to dispute the magistrate's erroneous designation of the offense shown by the evidence to have occurred, an error of *law,* not fact. (See *People* v. *Bird,*

*supra,* 212 Cal. 632, 641-642; *People* v. *Sturman, supra,* 56 Cal.App.2d 173, 177 [132 P.2d 504]; *People* v. *Dal Porto,* 17 Cal.App.2d 755, 758 [62 P.2d 1061, 63 P.2d 1199]; cf. 26 So.Cal.L.Rev. 455, 457.) However, no case has ever indicated that the amendment was intended to allow the district attorney to ignore the magistrate's findings of *fact* and charge the defendant with an offense or offenses which the magistrate has expressly found never took place." (4 Cal.3d at p. 666.)

There is nothing in the *Jones* opinion to indicate that anything in either *Bird* or *Parks* has been overruled or disapproved. They were simply inapplicable to the facts of the *Jones* case.

 In the case at bench, there is no showing that the magistrate disbelieved the testimony describing the homicidal assault which is the basis of the prosecution's case. The unimpeached, credible evidence received at the preliminary examination supports an inference of malice and gives probable cause to try petitioner for murder, but the magistrate acted upon his personal opinion that the offense was no more than manslaughter. In so doing he committed the same error of law as did the magistrate in *Bird.*

The magistrate's determination in the case at bench that the defendant acted without malice was not a "factual finding" as that term was used in *Jones.* In the nomenclature of the *Jones* opinion, the magistrate "expressly or impliedly concluded that the evidence failed to show probable cause" (as in *Bird* and *Parks*); and the district attorney was entitled to "challenge the magistrate's ultimate finding" that the evidence was insufficient.[5]

The petition for a writ of prohibition is denied. The alternative writ is discharged, and the stay order made by this court is vacated, effective when this decision becomes final.

Jefferson, J., and Dunn, J., concurred.

A petition for a rehearing was denied February 5, 1974, and petitioner's application for a hearing by the Supreme Court was denied March 20, 1974. Mosk, J., was of the opinion that the application should be granted.

---

[5]See also *People* v. *Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478], where the court said: "Where, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches an ultimate legal conclusion therefrom—i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—such conclusion is open to challenge by inclusion in the information which action is thereafter subject to attack in the superior court under Penal Code section 995, and ultimately to appellate review."